IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**FREDERICK RAGIN**                                                                                   **PLAINTIFF**

**V.**                                                          **NO. 4:15-CV-133-DMB-JMV**

**EARNEST LEE; DEPUTY WARDEN ANDREW
MILLS, WARDEN TIMOTHY MORRIS; and
COMMISSIONER MARSHALL FISHER**                           **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This pro se prisoner action is before the Court on the motion for summary judgment of Timothy Morris. Doc. #39.

**I
Procedural History**

On or about September 21, 2015, Frederick Ragin filed a complaint in this Court against Earnest Lee, Andrew Mills, Timothy Morris, and Marshall Fisher. Doc. #1. In his complaint, Ragin alleges that he "was shot [a]nd assaulted by [a] state trooper ... located at Unit 29-C-Bldg-A-Zone at about 3:00 am." *Id.* at 3.

On February 1, 2016, following a *Spears* hearing, United States Magistrate Judge Jane M. Virden issued a Report and Recommendation recommending dismissal of all claims in this action except a failure to protect claim asserted against Morris. Doc. #15 at 4. This Court adopted the Report and Recommendation on May 17, 2016. Doc. #25.

On September 12, 2016, Morris filed a motion for summary judgment on the sole remaining claim. Doc. #39. Ragin did not respond to the motion.

**II
Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to

judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

### III
### Factual Background

At all relevant times, Ragin was an inmate in the custody of the Mississippi Department of Corrections ("MDOC") housed in Unit 29-C at the Mississippi State Penitentiary in Parchman, Mississippi. Unit 29-C has an "open barracks" layout with two zones. Each of the two zones in the unit consists of one large room with numerous beds, rather than individual cells, and holds approximately 64 inmates.

On March 13, 2015, a task force of law enforcement officers from various agencies conducted a large-scale shakedown of Unit 29. The operation involved several agents from the Mississippi Highway Patrol ("MHP")[1] as well as agents from other MDOC institutions. As the warden for the unit, Morris: (1) directed his staff to prepare "shakedown kits," which he described as "boxes for each shakedown team that consisted of the items needed to conduct an effective shakedown, i.e. – note pads, markers, gloves, cutters, bags, non-allowable item sheets and etc.;" (2) ensured that his staff prepared coolers of water and Gatorade for the teams; (3) organized distribution of the agents into teams; (4) communicated with team leaders; (5) traveled from unit to unit during the operation to ensure each team had adequate supplies; and (6) following the operation, collected all contraband from the teams. Neither Morris nor his team participated directly in the actual physical shakedown.

The actual shakedown was performed by the MHP Special Operations Group ("SOG") and other MDOC employees. Based on "[i]ntelligence and reconnaissance" that the inmates would be violent and armed, Marty Davis, the SOG leader assigned to Unit C, deemed the shakedown a high risk operation and requested a SWAT team be on standby for support. The SOG troopers were armed with wooden batons and non-lethal projectiles. Once the area was secure, with all inmates restrained, MDOC personnel entered the zone and conducted the shakedown. After the shakedown was completed, the inmates were released.

According to Ragin:

> I was in my bed asleep. I heard someone say "Get Down!" I heard (2) shots. I realized I had been shot. Then someone grabbed me off my rack and put me on the floor. Then some dude hit me on my right side with a stick while I was on the floor. He told me to put my hands on my head or behind my back. They eventually handcuffed me. Some female officer asked me what happened to my back. I told her I got shot [and] snatched off the rack. Warden Morris was standing there. Officer Giles was in the zone when I got shot.

---

[1] According to the paperwork submitted after the operation, there were ten MHP agents involved in the shakedown of each Unit 29-C zone.

Doc. #39-3.

Morris, for his part, submitted an affidavit stating he "did not witness any inmate being assaulted with a baton or shot ...." Doc. #39-1 at ¶ 6. According to Morris, had he been present at "Unit 29-C during the shakedown, there would not have been an opportunity for me to monitor and control all of the interactions among all of the state personnel and all of the inmates on the zone." *Id*. at ¶ 9.

## IV
## Analysis

"An officer who is present at [a] scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (sting cite omitted). To establish this type of claim, a plaintiff must show that the defendant: "(1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." *Carrol v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) (internal quotation marks omitted).

In seeking summary judgment, Morris argues that "Plaintiff cannot demonstrate there would have been a reasonable opportunity for Morris to recognize, evaluate and prevent" the alleged excessive force used on Ragin. Doc. #40 at 6. The Court agrees. Ragin's assertion that "Morris was standing there" fails to establish the elements of his failure to protect claim. Even accepting this allegation as true, there is no evidence before the Court that Morris had a reasonable opportunity both to perceive that a constitutional violation was taking place and to act to prevent it. Therefore, Ragin's failure to protect claim must fail.

## V
## Conclusion

For the reasons above, Timothy Morris' motion for summary judgment [39] is **GRANTED**. A final judgment consistent with this opinion will issue separately.

**SO ORDERED**, this 12th day of May, 2017.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
